UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

NICHOLAS LABIT,                    )
                                   )
    *Plaintiff*,                )
                                   )
v.                                 )          No. 1:16-cv-488-SKL
                                   )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
    *Defendant*.                )

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Nicholas Labit ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying him supplemental security income ("SSI"). Each party has moved for judgment [Docs. 17 & 21] and filed supporting briefs [Docs. 18 & 22]. Plaintiff also filed a reply in support of his motion [Doc. 23]. This matter is now ripe. For the reasons stated below, (1) Plaintiff's motion for judgment on the pleadings [Doc. 17] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 21] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED**.

## I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his application for SSI on August 17, 2013 [Doc. 11 ("Tr.") at Page ID # 66], alleging disability beginning April 19, 2011 (Tr. 10, 133). Plaintiff's claim was denied initially and upon reconsideration at the agency level. After a hearing was held on September 17, 2015, the administrative law judge ("ALJ") found on November 20, 2015, that Plaintiff was not under a disability as defined in the Social Security Act (Tr. 7-21). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner (Tr. 1-5).

Plaintiff timely filed the instant action [Doc. 1].

## II.    FACTUAL BACKGROUND

### A.    Education and Employment Background

Plaintiff was born June 26, 1988, which made him a "younger individual," on the date the application was filed (Tr. 19, 133). Plaintiff has at least a high school education and is able to communicate in English (Tr. 20). Plaintiff's past relevant work history ranged from light to medium and from unskilled to semi-skilled, and includes hotel guest clerk and inspector (Tr. 19).

### B.    Medical Records

In his Disability Report, Plaintiff alleged disability due to degenerative disc disease in the lower back, bulging discs compressing spinal cord in the mid-thoracic region, chronic thigh pain in left leg, nerve damage in lower left leg, severe anxiety disorder, and depression (Tr. 149). Plaintiff [Doc. 18 at Page ID # 729-32] and the ALJ (Tr. 13-18) each set forth a detailed factual recitation with regard to Plaintiff's medical record and the hearing testimony. Defendant states that she adopts the statement of facts set forth by the ALJ [Doc. 22 at Page ID # 746], but she also includes extensive citation to the record throughout her argument [*id.* at Page ID # 750-66]. While there is no need to summarize the medical records herein, the relevant records have been reviewed.

### C.    Hearing Testimony

A hearing occurred on September 17, 2015, at which Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing (Tr. 27-43) has been carefully reviewed.

## III.    ELIGIBILITY AND THE ALJ'S FINDINGS

### A.    Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B.     The ALJ's Findings

At step one of the sequential process, the ALJ found Plaintiff had not engaged in substantial gainful activity since the application date, August 17, 2013[1] (Tr. 12). At step two, the ALJ found Plaintiff had one severe impairment, degenerative disc disease (Tr. 12). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b), with some further restrictions, as follows:

> The claimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. The claimant can stand/walk for a total of four hours in an eight-hour workday and sit for a total of six hours in an eight-hour workday. The claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally stoop, kneel, crouch, and crawl.

(Tr. 14). At step four, the ALJ found Plaintiff was unable to perform any past relevant work (Tr.

---

[1] SSI applicants are not entitled to benefits until "the month following the month" that the application is filed, regardless of the date of alleged disability onset. 20 C.F.R. § 416.335.

19). At step five, however, the ALJ found there were jobs available to Plaintiff in the national economy, such as assembly jobs and hand packager jobs (Tr. 20). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Act from the date the application was filed through the date of the ALJ's decision (Tr. 21).

## IV. ANALYSIS

Plaintiff asserts that this matter should be reversed and/or remanded under sentence four for several reasons: (1) "Based upon the medical record, specifically the findings by [Plaintiff's] treating physician, Dr. Ball, [Plaintiff] meets the requirements of Listing 12.07, and is therefore disabled as a matter of law"; (2) the "ALJ erred by failing to undertake a specific evaluation of Listing 12.07"; (3) the "ALJ improperly failed to accord controlling weight to the opinion of [Plaintiff's] treating physician, Dr. Ball"; and (4) the "ALJ erred by mischaracterizing [Plaintiff's] functional restrictions and activities of daily living." [Doc. 18 at Page ID # 732].

The Court will first address Plaintiff's argument that the ALJ's decision should be reversed or remanded due to the ALJ's failure to specifically evaluate whether Plaintiff met the requirements for Listing of Impairment 12.07 (Plaintiff's second issue). The Court will then consider Plaintiff's argument that he meets the requirements of Listing 12.07 (Plaintiff's first issue), which will also require the Court to consider whether the ALJ properly evaluated the medical opinion of Dr. Ball, Plaintiff's treating physician (Plaintiff's third issue), because Plaintiff relies heavily on Dr. Ball's opinion in support of his argument that he meets the requirements of Listing 12.07. Last, the Court will consider Plaintiff's argument that the ALJ's decision should be reversed or remanded because the ALJ mischaracterized Plaintiff's "functional restrictions and activities of daily living." [*id.*].

### A.       Standard of Review

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).  Under a sentence-four remand, the Court has the authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing."  42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration."  *Morgan v. Astrue*, No. 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence.  42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (citations omitted).  Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings.  *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d

690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence that was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

**B.      The ALJ's Failure to Specifically Discuss the Requirements of Listing 12.07 at Step Three**

In the portion of his decision devoted to addressing whether Plaintiff has severe impairments that meet or equal one of the listings at step three of the sequential evaluation process, the ALJ only stated: "In evaluating the claimant's disability claim, the undersigned has considered all the listing of impairments with respect to the claimant's medical condition. Although the claimant has indicated that he believes that his condition meets or equals a listing, no medical

7

evidence has been provided to support this claim." (Tr. 14). Plaintiff is correct that the Sixth Circuit has held that such a limited step three analysis can be insufficient and require remand. *See Reynolds v. Comm'r*, 424 Fed. App'x 411, 416 (6th Cir. 2011) (citations omitted) ("In short, the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence.") And, had the ALJ's decision not contained any further analysis elucidating the reasons why he found Plaintiff did not meet the requirements of Listing 12.07, remand would likely be appropriate. However, as explained below, that is simply not the case here.

Listing 12.07, for Somatoform Disorders,[2] requires Plaintiff to meet two of the four "Paragraph B" criteria, which are:

1. Marked restriction of activities of daily living;

2. Marked difficulties in maintaining social functioning;

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration

*See* 20 C.F.R. Part 404, Subpart P, Appendix 1.[3] In this case, albeit at step two rather than at step

---

[2] Somatoform Disorders are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Part 404, Subpart P, Appendix 1.

[3] Recent revisions to the rules regarding mental impairments, effective January 17, 2017, have resulted in new Paragraph B criteria. *See* 81 Fed. Reg. 66138-01, 2016 WL 5341732, at *66161-62 (Sept. 26, 2016). Because these revisions were not in effect at the time Plaintiff applied for SSI or when the ALJ rendered his decision, the Court will apply the former version of Paragraph B, as the ALJ did.

three, the ALJ explained why he concluded that Plaintiff had no limitation in his activities of daily living or in his ability to maintain concentration, persistence, or pace; and only mild limitation with regard to social functioning (Tr. 13). The ALJ also found that the record evidenced no episodes of decompensation that have been of extended duration (Tr. 13). Thus, it is clear from the ALJ's decision that he found Plaintiff did not meet the Paragraph B criteria and therefore Plaintiff could not meet the requirements for Listing 12.07. The fact that the ALJ made this finding at step two rather than at step three does not constitute harmful error. *See Forrest v. Comm'r of Soc. Sec.*, 591 Fed. App'x 359, 366 (6th Cir. 2014) (citation omitted) (finding no error where "the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three"); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (In affirming the ALJ's decision, the court noted that the ALJ "described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings," and affirmed "even though [the ALJ] did not spell out every fact a second time under the step three analysis."); *Kado v. Colvin*, No. 1:15-cv-02044-DAP, 2016 WL 6067779, at *8 (N.D. Ohio Oct. 17, 2016) (citing *Bledsoe*, 165 Fed. App'x at 411; other citations omitted) ("If at Step Three the ALJ does not provide meaningful analysis in concluding whether the claimant's impairment 'meets or equals' any of the listings in the Listing of Impairments, the Court may look at the ALJ's decision in its entirety to see if the ALJ made sufficient factual findings to support his conclusion.").

The ALJ provided an adequate explanation of his Paragraph B findings in his analysis at step two of the sequential process. Because the Court can look to the ALJ's step two findings in order to determine whether the ALJ's decision is adequate at step three, Plaintiff's argument on

this issue is without merit, and his motion will be denied in this regard.

### C. Whether There is Substantial Evidence in the Record Supporting the ALJ's Determination that Plaintiff Does Not Meet the Paragraph B Criteria; Including the ALJ's Evaluation of Dr. Ball's Opinion

Plaintiff argues that the ALJ's determination that he did not meet Listing 12.07 is not supported by substantial evidence [Doc. 18 at Page ID # 733-34]. Because Plaintiff relies, in significant part,[4] on Dr. Ball's opinion concerning Plaintiff's mental restrictions in support of this argument [Doc. 18 at Page ID #733-34], the Court will first address Plaintiff's argument that the ALJ erred in declining to assign controlling weight to Dr. Ball's opinion. The Court will also include in this discussion the ALJ's assessment of Dr. Ball's opinion concerning Plaintiff's *physical* limitations, which assessment Plaintiff also challenges, in another section of his brief [Doc. 18 at Page ID # 736-38; Doc. 23 at Page ID # 770-71]. Although Dr. Ball's opinion concerning Plaintiff's physical limitations does not bear on Plaintiff's Listing 12.07 argument, the ALJ did not separately evaluate Dr. Ball's opinions on Plaintiff's mental versus physical limitations in his decision; thus, for the sake of clarity and simplicity, the Court will consider the ALJ's treatment of both of Dr. Ball's opinions together.

### 1. The ALJ's assessment of Dr. Ball's Opinions

Dr. Ball completed an "Assessment of Mental Limitations" form on November 19, 2013, in which he checked boxes indicating that, in his opinion, Plaintiff had "fair" abilities to perform activities of daily living without supervision, to interact appropriately and engage in other aspects of social functioning, to follow work rules, to maintain his personal appearance, and to relate to

---

[4] The Court notes that Plaintiff also relies on his own testimony, and records from Dr. Robert Stetson's office, in support of his argument that he meets the Paragraph B criteria [Doc. 18 at Page ID # 734]. The Court will address this evidence below.

co-workers and supervisors, with "fair" being defined as: "ability to function in this area is usually satisfactory, but at times is limited or precluded"; and that Plaintiff had "poor" abilities of concentration, persistence, and pace, to adapt to stressful circumstances in work settings, to deal with the public, to deal with stress of ordinary work, to demonstrate reliability, to persist at assigned tasks, to work at a consistent pace, and to timely complete tasks, with "poor" being defined as: "ability in this area is usually precluded." (Tr. 554-56). Dr. Ball opined that Plaintiff nevertheless had the ability to manage his own benefits (Tr. 556). When asked to "describe/discuss any medical/clinical findings that support your assessment," Dr. Ball wrote: "Difficult ambulation & straight cane. Hyperalgesia of the thoracic & lumbar spine. [Illegible] ROM severely limited due to pain." (Tr. 556).

Dr. Ball completed a similar check-mark style form concerning Plaintiff's physical limitations on November 19, 2013, in which he opined that Plaintiff could sit for 30 minutes at a time, up to four hours per day total; stand or walk for 15 minutes at a time, up to two hours per day total; could occasionally lift/carry up to ten pounds, infrequently lift up to 20 pounds, and never lift anything over 20 pounds (Tr. 655). Dr. Ball also opined that Plaintiff constantly experienced at least moderate pain, and would need one hour of bedrest during a normal workday, a 20-minute break every two hours, and would be absent six to eight days per month (Tr. 655-57). When asked to "state the diagnosis of the problem that causes your patient's limitations and restrictions, as well as the objective, clinical, or other specific findings that support your diagnosis and opinion," Dr. Ball wrote, "Chronic low back pain & [left, lower extremity] radiculopathy [illegible] chronic fatigue." (Tr. 655).

Concerning Dr. Ball's opinions, the ALJ wrote:

11

Little weight has been given to the medical source statements of Dr. Gregory Ball (Exhibits 23F and 30F). Although a treating physician, Dr. Ball's medical opinion that the claimant would not be able to work for eight-hours per day due to his impairments is not consistent with his treatment records that revealed pain reduction with the use of pain medication without significant functional restrictions. Numerous treatment records from Dr. Ball and from Pain Management revealed the claimant experienced some pain reduction with the use of medication such as Oxycodone and the use of steroid spinal injections (Exhibit 29F). The claimant's physical examinations revealed some pain and tenderness in his lower back but normal physical function. The claimant was noted as having an antalgic gait but was not found to be unable to ambulate. Dr. Ball's records also revealed no long-term inpatient hospitalization or significant spinal surgery other than the use of spinal pain injections. In addition, the undersigned has noted that the claimant's hearing testimony differed from Dr. Ball's medical statement. The claimant did not indicate[] that he needed to lie down during the day as referenced by Dr. Ball's medical source statement. Therefore, little weight has been given to Dr. Ball's opinion regarding the claimant's physical and mental limitations.

(Tr. 18-19).

Plaintiff argues that the ALJ's decision to discount Dr. Ball's opinion is an error requiring remand. Plaintiff argues that "a close look at the record shows that any pain reduction" from medication and injections was "temporary at best," noting that records from Dr. Ball's office from August 2014 described a then-recent episode during which Plaintiff experienced severe spasms and had to be assisted to his bed by his father and brother [Doc. 18 at Page ID # 737 (citing Tr. 597)]. Plaintiff also points to a November 2012 note from Dr. Ball which indicates that Plaintiff had muscular atrophy in his left calf, which, Plaintiff argues, "supports Dr. Ball's conclusion that his condition caused him a significant debility." [Doc. 18 at Page ID # 737-38 (citing Tr. 461)]. Finally, Plaintiff argues that "[t]here is nothing in Dr. Ball's notes to indicate to a layperson that Mr. Labit is not disabled," and therefore, the ALJ "improperly substituted his own judgment for

the conclusions of a layperson." [Doc. 23 at Page ID # 771].

The Commissioner contends that "[a]lthough the ALJ recognized Dr. Ball was a treating source, he properly determined that Dr. Ball's opinion deserved only little weight because it was inconsistent with the objective evidence of record, Plaintiff's improvement with treatment, Plaintiff's conservative course of treatment, and Plaintiff's own testimony." [Doc. 22 at Page ID # 759 (citing Tr. 18-19)].

In considering a claim of disability for SSI benefits, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 416.927(c)(2).[5] But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's

---

[5] The treating physician rule has been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852-57 (Jan. 18, 2017). Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. For all claims filed on or after March 27, 2017, the rules in 20 C.F.R. § 404.1520c (not § 404.1527) shall apply. As Plaintiff's application was filed before March 27, 2017, the treating physician rule applies. *See id.* § 404.1527.

opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's medical opinion."); *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." (internal quotation marks omitted) (citing *Wilson*, 378 F.3d at 544)).

After careful consideration, the Court finds that the ALJ's evaluation of Dr. Ball's opinion is adequate and is supported by substantial evidence. As the Commissioner notes and the ALJ discusses, there are numerous normal findings in the record concerning Plaintiff's physical state. Athens Neurology records from January 2012 show normal muscle tone and bulk, no atrophy, and no fasciculation (Tr. 402). These records also include the results of an MRI, which state that, even where there was some deformation due to "herniated disc material," there was nevertheless "[n]o definite signal abnormality." (Tr. 403). These records further state that Plaintiff "saw a surgeon at UT," but the record does not reflect that surgery was recommended; rather, the doctor decided to increase Plaintiff's medication (Tr. 408). Later records from the same office state that Plaintiff "had MRI brain which was unremarkable and MRI C-spine which showed minimal disc bulges at C7-T1, T2-3 and T3-4 but of questioned significance. . . . PCP also performed MRI L-spine and legs which were unremarkable." (Tr. 418). Even later records, from February 2013, continue to show no atrophy, normal muscle tone and bulk, and no fasciculation (Tr. 431). Records of an exam performed at the McCallie Physician Office in July 2012 indicate that, upon exam, "Waddell signs are negative. Sitting straight leg raising is negative bilaterally. Motor strength is 5/5 for the

left lower extremity." (Tr. 351). The consultative examiner, William Holland, M.D., wrote that he "did not see a clear etiology of the claimant's allegation of left leg pain and weakness," and further noted that there was "no evidence of muscle atrophy or wasting in the legs." (Tr. 227-29). The Court notes that the ALJ gave Dr. Holland's opinion "some weight." (Tr. 19).

This evidence supports the ALJ's conclusion that Dr. Ball's opinion should not be given controlling weight because it is inconsistent with other substantial evidence in the record. In other words, even if, as Plaintiff argues, "[t]here is nothing in Dr. Ball's notes to indicate to a layperson that Mr. Labit is not disabled," there is other evidence in the record – the normal findings discussed directly above – which *does* tend to indicate that Plaintiff is not disabled. Plaintiff emphasizes that the ALJ failed to specifically discuss the fact that Dr. Ball observed muscular atrophy in Plaintiff's calf during a November 2012 office visit, a fact which would support Dr. Ball's opinion [Doc. 18 at Page ID # 737-38 (citing Tr. 461)]; however, the ALJ cited to the exhibit (20F) containing that record multiple times, and in any event, it is well-settled that an "ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 Fed. App'x 661, 665 (6th Cir. 2004).

The ALJ also gave good reasons for discounting Dr. Ball's opinion after he decided not to assign it controlling weight. First, the ALJ noted that under Dr. Ball's care, Plaintiff experienced relief from medication. Plaintiff takes issue with this finding, arguing that "a close look at the record shows that any pain reduction was temporary at best." [Doc. 18 at Page ID # 737]. However, as the Commissioner argues, there are several notations ranging from May 2013 to May 2014 in Dr. Ball's records showing that Plaintiff's condition was improved with medication (Tr. 474, 601, 625), and Plaintiff has been taking certain types of medication consistently for a fairly

long time, which in itself suggests that the medications are at least somewhat effective. Indeed, as the Commissioner points out, according to Dr. Ball's notes, the August 2014 incident mentioned above appears to have been as a result of a decrease in Plaintiff's medication. The notes state: "Nicholas tried to decrease the MTD but could not tolerate the pain. He had more low back pain and left thigh pain." (Tr. 597). It is also noteworthy that Dr. Ball never recommended any treatments other than medication and spinal injections—if these measures were not effective in controlling Plaintiff's condition, one would expect Dr. Ball to recommend surgery or refer Plaintiff to a surgeon, or at least recommend physical therapy. *See Helm v. Comm'r of Soc. Sec. Admin.*, 405 Fed. App'x 997, 1001-02 (6th Cir. 2011) (citation omitted) (noting that the ALJ gave good reasons for discounting a treating physician's opinion because the physician's "modest treatment regimen . . .—consisting solely of pain medication—was inconsistent with a finding of total disability").

The ALJ also found that Plaintiff's own reports of his functional limitations differed from Dr. Ball's (Tr. 18). For example, Dr. Ball found that Plaintiff needed to lie down on bed rest for an hour, and could not sit for more than four hours each day (Tr. 655); Plaintiff, however did not testify that he needed to lay down during the day and indeed stated that he spent most of the day sitting up (Tr. 35); Plaintiff also indicated no issues with sitting on his adult function report (Tr. 172). The Commissioner points out that there are other inconsistencies—Dr. Ball opined that Plaintiff could lift up to 20 pounds, while Plaintiff stated he could only lift up to three pounds (Tr. 172, 655). Plaintiff argues these are minor inconsistencies, and to an extent Plaintiff is correct; nevertheless, these inconsistencies go to the heart of Plaintiff's functional abilities, and it was certainly not improper for the ALJ to rely on the inconsistencies when deciding what weight to

assign to Dr. Ball's extremely restrictive opinion. "[C]onsistency of the opinion with the record as a whole" and "supportability of the opinion" are two of the factors the ALJ is required to consider when determining how much weight to assign to a medical opinion. *See Wilson*, 378 F.3d at 544 (citation omitted).

Moreover, although the ALJ does not state this as a "good reason," the Court notes that Dr. Ball gave little explanation for his opinions. This is particularly true with regard to the assigned mental health restrictions, for which there is little to no treatment or testing in Dr. Ball's records. *See Rogers v. Comm'r of Soc. Sec.*, 225 F.3d 659, 2000 WL 799332, at *6 (6th Cir. June 9, 2000) (table) (proper to discount both treating physician opinions, which were "forms in which spaces are filled out and boxes are checked," and "[n]either explains how the authors arrived at their diagnoses").

In sum, the Court finds the ALJ's decision to discount Dr. Ball's opinions is supported by substantial evidence and is the product of the application of proper legal standards. Plaintiff's motion will be denied in this regard. Moreover, because the ALJ assigned the opinion little weight, it was proper for the ALJ not to rely on it when determining that Plaintiff did not meet the Paragraph B criteria for Listing of Impairment 12.07[6].

### 2. Whether the ALJ's Decision that Plaintiff does not Meet the Paragraph B Criteria is Supported by Substantial Evidence

In addition to Dr. Ball's opinion, Plaintiff also relies on his own statements and the records of Dr. Robert Stetson in support of his argument that he meets the Paragraph B criteria for Listing

---

[6] The Court notes that only the Paragraph B criteria are at issue. The ALJ did not make any findings with regard to Paragraph A, and the Commissioner makes no argument in her brief concerning the Paragraph A criteria.

of Impairment 12.07; specifically, he argues that this evidence shows he has marked restrictions in concentration, persistence, and pace, that he is "significantly limited" in activities of daily living, and that he "has a poor ability to adapt to [a] stressful work-like setting, which would result in episodes of decompensation that would exacerbate his pain." [Doc. 18 at Page ID # 734]. The Court disagrees that the evidence cited by Plaintiff warrants remand.

As stated earlier in this opinion, the question is not whether there is evidence to support Plaintiff's position; rather the question is whether there is substantial evidence to support the ALJ's findings. *Smith*, 99 F.3d at 782; *Ross*, 440 F.2d at 691. Here, there is substantial support for the ALJ's conclusion that Plaintiff had no limitations in concentration, persistence, and pace. The State agency consultants, initially and upon reconsideration, found that Plaintiff had no difficulties in maintaining concentration, persistence, or pace (Tr. 49, 62). The ALJ gave their opinions "significant weight." (Tr. 18). As for Dr. Stetson's records (which Plaintiff cites to in support of his argument), most of the references to Plaintiff's inability to maintain concentration and his memory problems are simply a restatement of Plaintiff's subjective complaints (Tr. 379, 380, 387). And, as the Commissioner points out, in the one instance in the record where it appears Dr. Stetson administered a test for Plaintiff's "Registration," "Recall," and "Concentration," Plaintiff scored 3/3, 3/3, and 5/5, respectively (Tr. 400). Furthermore, the most recent records from Dr. Stetson's office state that Plaintiff reported his "[c]oncentration is pretty steady," and that it is "not as bad as in the past." (Tr. 376-77). While Plaintiff stated in his adult function report that he can only pay attention for ten minutes at a time (Tr. 172), the ALJ found that Plaintiff's allegations were not entirely credible, particularly considering he endorsed an ability to drive a car, go to doctor's appointments, handle a checkbook and savings account, and shop online for Christmas and

birthday gifts (Tr. 15, 170).

As for activities of daily living, the ALJ explained:

> The claimant stated in an Adult Function Report that he could dress himself, [care] for his hair, shave, feed himself, and use the toilet without significant problems (Exhibit 4E/2). The claimant stated that he could drive a car, ride in a car, and go out alone. He also stated that he could shop for items via the computer (Exhibit 4E/5). The claimant also stated that he could count change, handle a savings account, and use a checkbook or money order (Exhibit 4E/5). The claimant also stated that he could attend his doctor's appointments (Exhibit 4E/6). Therefore, the undersigned has found the claimant has no limitation in this area.

(Tr. 13).

This finding by the ALJ is supported by the findings of the State agency consultants, who found that Plaintiff had no difficulties in activities of daily living (Tr. 49, 62). The consultative psychological examiner, Jacqueline Williams, Ph.D., H.S.P., also noted in May 2012 that Plaintiff reported he managed his medications and finances "with little or no difficulty," that he was able to correctly make change, that he drove regularly (including to the consultative exam appointment), and that he has hobbies including "reading, spending time on the computer, and watching TV." (Tr. 236). Dr. Williams opined that Plaintiff "showed no evidence of short-term memory impairment," and "mild impairment in his ability to sustain concentration" and "in his long-term and remote memory functioning." (Tr. 236-37). The ALJ assigned Dr. Williams's opinion "some weight," specifically noting that despite her provisional diagnosis of anxiety and depressive disorder, Dr. Williams did not find Plaintiff had "significant mental restriction." (Tr. 19).

To contradict the ALJ's findings concerning his activities of daily living, Plaintiff only cites Dr. Ball's opinion and Plaintiff's own function report, in which Plaintiff stated that he had to

sit down to get dressed and to use to the bathroom (Tr. 167), that he is not able to do any chores around the house, and that he does not cook or prepare any meals (Tr. 169). As stated above, however, the ALJ's decision to discount Dr. Ball's opinion is supported by substantial evidence, and the ALJ further found that Plaintiff's statements about his conditions were not entirely credible.

Activities of daily living include such activities as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for . . . grooming and hygiene, using telephones and directories, and using a post office." *Rabbers*, 582 F.3d 647, 658 (6th Cir. 2009) (internal quotation marks and citation omitted). There is substantial support for the ALJ's finding that Plaintiff can adequately care for his hygiene, manage his finances, that he shops online, and that he can perform other significant activities of daily living like driving a car and attending doctor's appointments. Additionally, the record is not clear as to whether Plaintiff is unable to cook at all, or if he simply chooses not to because his mother and brother cook for the family (Tr. 35). Plaintiff admitted he can cook food in the microwave, for example (Tr. 35). The Court therefore finds adequate support in the record for the ALJ's determination that Plaintiff has no restrictions in his activities of daily living.

Plaintiff also makes a passing argument that Dr. Ball's opinion supports a finding that Plaintiff is likely to have episodes of decompensation in the future if he is subjected to a work-like environment [Doc. 18 at Page ID # 734]. The Court rejects this argument, there is no record of any past episodes of decompensation of extended duration.

In sum, the Court finds substantial support for the ALJ's decision to discount Dr. Ball's opinion concerning Plaintiff's mental and physical limitations. Moreover, the Court finds

substantial support for the ALJ's determination that Plaintiff did not meet the requirements of paragraph B, and therefore does not qualify as disabled under Listing of Impairment 12.07, despite the evidence Plaintiff emphasizes in his brief.

### D. The ALJ's Characterization of Plaintiff's Functional Restrictions and Activities of Daily Living

Last, Plaintiff argues that the "ALJ erred by mischaracterizing [Plaintiff's] functional restrictions and activities of daily living." [Doc. 18 at Page ID # 738]. Plaintiff asserts the ALJ "cherry-picked much of the record," because the ALJ failed to note that Plaintiff had to sit down while dressing himself and using the bathroom, failed to note that Plaintiff "does not prepare meals," and characterized Plaintiff's medical treatment as "conservative." [*id.* at Page ID # 738-39].

The Court has already addressed these arguments to an extent above, by finding that there is substantial support in the record for the ALJ's finding that Plaintiff has no restrictions in his activities of daily living, and for the ALJ's decision to discount Dr. Ball's opinion. The Court will therefore only briefly address these final arguments.

The "cherry picking" argument asserted by Plaintiff is frequently made but seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Social Security*, 572 F.3d 272, 284 (6th Cir. 2009) (holding "we see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence"); *accord DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry picking" allegations are seldom successful because crediting them "would require courts to re-weigh record evidence"). The Sixth Circuit has consistently upheld the discretion vested in ALJs to weigh conflicting record evidence in assessing

disability status. Here, Plaintiff has not "persuasively shown that the ALJ erred in conducting [the] difficult task" of weighing the record evidence. *White,* 572 F.3d at 284. Contrary to Plaintiff's argument, the ALJ properly considered and discussed the evidence in the record as a whole and discussed both positive and negative findings.

The ALJ found that Plaintiff had the ability to "dress himself, [care] for his hair, shave, feed himself, and use the toilet without significant problems." (Tr. 13). Plaintiff argues he did, in fact, have significant problems in using the bathroom and getting dressed, because he had to sit down to perform these activities [Doc. 18 at Page ID # 738]. Plaintiff cites no authority in support of this argument and the Court rejects it. The ALJ clearly did not overlook or fail to consider the fact that Plaintiff has to sit down to get dressed or to use the bathroom, as the ALJ cited the exact page in the record on which Plaintiff reported that limitation (Tr. 13 (citing Exhibit 4E/2)). The ALJ's characterization of Plaintiff's ability is reasonable, as Plaintiff is able to make a minor adjustment (sitting down) and still perform the activity himself without assistance. And, the Court notes again that while Plaintiff stated on his adult function report that he does not cook (Tr. 169); he testified at the administrative hearing that he can prepare simple meals like cereal and food in the microwave (Tr. 35).

As for the ALJ's characterization of Plaintiff's medical treatment, Plaintiff acknowledges that the primary form of treatment he receives is medication; he nevertheless argues that this is not conservative treatment because he was "taking very strong medication, including 30 mg of methadone, 15 mg of Oxycodone, and 350 mg of Soma for his back pain and spasms." [Doc. 18 at Page ID # 738-39]. The Court finds the ALJ's characterization of Plaintiff's medical treatment as conservative is reasonable. The ALJ did not overlook any particular treatment that Plaintiff

22

received in his analysis; he cited to the exhibits in the record which state the medications Plaintiff was receiving, and specifically noted the fact that Plaintiff took Soma, Lyrica, and Oxycodone (Tr. 16-17). Plaintiff cites no authority in support of his position that medication, even very strong medication, should not be considered "conservative" care, especially when compared to the treatments the ALJ considered to be more serious, including surgery and long-term inpatient hospitalization (Tr. 17). Indeed, Defendant cites cases that lend support to the ALJ's finding that such treatment is conservative. [Doc. 22 at Page ID # 766 (citing, e.g., *Helm*, 405 Fed. App'x at 1001-02 (citation omitted) (noting that the ALJ gave good reasons for discounting a treating physician's opinion because the physician's "modest treatment regimen . . .—consisting solely of pain medication—was inconsistent with a finding of total disability"); *Starks v. Colvin*, No. 3:15-cv-00677, 2016 WL 8716265, at *23 (M.D. Tenn. July 1, 2016) (internal quotation marks and citation omitted) ("In terms of medical care, it is proper to classify taking prescription medications and receiving injections as 'conservative' treatment."); *Dinkins v. Comm'r of Soc. Sec.*, No. 1:13 CV 373, 2014 WL 1270587, at *12 (N.D. Ohio Mar. 26, 2014) ("Indeed, the ALJ pointed to treatment notes where Dr. Nickels prescribed *conservative treatment* including narcotic pain relievers, anti-inflammatory medications, and neurological medications.")].

The Court finds no harmful error with the ALJ's characterization of Plaintiff's activities of daily living or his medical treatment. The ALJ did not "cherry-pick" the record; he weighed the relevant evidence in the record, as he was required to do. *See Garner*, 745 F.2d at 387.

## V.    CONCLUSION

In sum, the Court concludes that the ALJ did not err in his consideration of Dr. Ball's opinion, or in his decision that Plaintiff did not meet the requirements of Paragraph B of Listing

12.07.  The ALJ's discussion of his Paragraph B findings was also adequate, even though it was included in step two rather than step three of the sequential process.  Finally, the ALJ's characterization of Plaintiff's activities of daily living is reasonable in light of the evidence in the record, and even in light of the specific evidence Plaintiff cites which could tend to support Plaintiff's position.  The Court concludes that the ALJ's overall assessment of Plaintiff's RFC is supported by substantial evidence, and that the Commissioner met her burden of proof at step five by relying on the testimony of the VE.  The Court further concludes that Plaintiff has failed to show that the ALJ's decision rests on an incorrect legal standard.

For the foregoing reasons, it is **ORDERED** that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 17] is **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 21] is **GRANTED**; and

3) The Commissioner's decision denying benefits is **AFFIRMED**.


SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE